## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| REGINALD MOUSCARDY, | Civil Action No. 20-2143 (RBK) |
| Petitioner, |  |
| v. |  |
| D.K. WHITE, | **OPINION** |
| Respondent. |  |

**ROBERT B. KUGLER, U.S.D.J.**

Petitioner is a federal prisoner who is currently incarcerated at FCI Fairton, in Fairton, New Jersey.  He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.)  Respondent filed a motion to dismiss for lack of jurisdiction, (ECF No. 16), and Petitioner filed an Opposition, (ECF No. 18).  Thereafter, the Court terminated Respondent's motion and ordered supplemental briefing to address the merits of the case. (ECF No. 20.) Respondent filed a supplemental brief, (ECF No. 28), and Petitioner filed a Reply, (ECF No. 31). For the reasons stated below, the Court will grant Respondent's motion and dismiss the Petition for lack of jurisdiction.

### I.      BACKGROUND

This case arises from Petitioner's criminal case in the United States District Court for the District of Massachusetts.  The First Circuit set forth the background of this case on direct appeal:

> The facts, as supported by the record, are as follows. On March 11, 2010, at approximately 12:30 p.m., an individual called 911 to report an assault at the corner of Belmont and Ferry Streets on the boundary of Everett and Malden, Massachusetts. The call was routed to the Everett Police Department. The caller reported that he saw a "man beating up his girlfriend or his wife," adding that the man was "giving it to her pretty good." The caller also provided descriptions of the man and the woman.

The 911 dispatcher relayed the information to police officers, describing the incident as a "possible domestic assault in progress" on the corner of Belmont and Ferry Streets. Everett Police Officer Matthew Cunningham and Sergeant Robert Zaino were the first to respond. When the officers arrived, they found a man and a woman who fit the descriptions given by the 911 caller. The man was later determined to be Reginald Mouscardy. Because the officers believed that the alleged assault may have occurred on the Malden side of Belmont Street, Officer Cunningham had Everett dispatch contact Malden Police and request that they respond to the scene.

Due to the nature of the 911 call, the Everett officers separated Mouscardy and the woman in order to see whether they would provide consistent accounts of the alleged incident. Officer Cunningham took Mouscardy around the corner to the Malden side of Belmont Street, where Mouscardy offered that nothing had happened and that there was no problem. Officer Cunningham did not question Mouscardy at this point.

After a brief period—Officer Cunningham testified that it was two to three minutes after his initial contact with Mouscardy and the woman—Malden Police Officer Robert Selfridge arrived on the scene. Officer Selfridge first spoke with Sergeant Zaino and the woman, who gave her name as Shannon Agnew. Agnew, who appeared upset, told Officer Selfridge that nothing had happened and that there had been no assault. She indicated that she knew Mouscardy and that she had been in a relationship with him for about three months, but she did not provide his name to the officers. Officer Selfridge testified that his interaction with Sergeant Zaino and Agnew lasted about thirty-five to forty seconds.

Officer Selfridge then went around the corner to interview Mouscardy. Mouscardy had his back against the wall of a building, and Officer Cunningham was to Mouscardy's left. Officer Selfridge first asked Officer Cunningham if Mouscardy had identified himself; Officer Cunningham informed him that Mouscardy refused to give his name. Officer Selfridge then asked Mouscardy for his name or any form of identification numerous times, but Mouscardy refused to comply, simply repeating that nothing had happened.

Mouscardy had grown visibly "agitated and fidgety" by this point, and he had begun "eye-balling" the area. Keeping his right hand in his right jacket pocket, Mouscardy began to circle away from the wall of the building until he was almost standing on the street. Mouscardy's actions and demeanor made Officer Selfridge uncomfortable, and he asked Officer Cunningham if Mouscardy had been patted down. After Officer Cunningham told Officer Selfridge

2

that he had not performed a pat-down, Officer Selfridge informed Mouscardy that he was going to search him for weapons, and asked him to take his right hand out of his jacket pocket. Mouscardy did not comply. Officer Selfridge initiated the pat-down. When his left hand reached Mouscardy's right jacket pocket, Mouscardy removed his right hand from the pocket and struck Officer Selfridge's left hand with enough force to throw it above Officer Selfridge's shoulder. Officer Selfridge then attempted to return his left hand to Mouscardy's right jacket pocket, and Mouscardy attempted to slap it away again. Officer Selfridge managed to grab the pocket, but Mouscardy then turned away and started to flee. Although the stitching tore slightly, the contents of the pocket remained enclosed and therefore unknown to the officers.

Officers Cunningham and Selfridge gave chase as Mouscardy fled on foot. Officer Selfridge estimated that he was within ten to twelve feet of Mouscardy throughout the pursuit, while Officer Cunningham followed slightly behind. As Mouscardy ran up the driveway of a residence on Rich Street in Everett, Officer Cunningham ran to the right side of the house in an apparent attempt to block Mouscardy's path of escape while Officer Selfridge remained on Mouscardy's heels.

During the chase, Officer Selfridge noticed that Mouscardy was struggling to remove something from his right pocket. Mouscardy managed to successfully remove the object, which he then transferred from his right hand to his left hand. Officer Selfridge observed that the object was a small handgun. In order to alert Officer Cunningham, Officer Selfridge screamed "he's got a gun" as he continued his pursuit. Mouscardy disappeared behind the Rich Street residence, and Officer Selfridge, now knowing that Mouscardy was armed, drew his weapon and maneuvered carefully around the corner of the house, where he observed Mouscardy attempting to scale a chain-link fence with the pistol still in hand. Officer Cunningham joined Officer Selfridge in the back yard of the residence.

After several commands from police to drop the gun, Mouscardy finally placed the pistol on top of a green plastic container and walked toward the officers. A struggle ensued when the officers attempted to handcuff Mouscardy pursuant to an arrest, but he was eventually restrained near the basement door of the residence. Officers retrieved the gun, which was determined to be a .32 caliber Beretta. Mouscardy's true identity was discovered when he was booked at the police station.

*United States v. Mouscardy*, 722 F.3d 68, 70–72 (1st Cir. 2013).

"On July 26, 2011, a jury convicted Mouscardy of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)." *United States v. Mouscardy*, 59 F. Supp. 3d 289, 291 (D. Mass. 2014).   At that time, the statute only required the Government to prove that Petitioner possessed a firearm and that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, not that he knew that he had such a conviction at the time he possessed the firearm. *See United States v. Nasir*, 982 F.3d 144, 161 (3d Cir. 2020).   For trial, Petitioner had stipulated that he had a conviction for a qualifying felony, but he did not stipulate that he knew he had a felony conviction at the time that he possessed the firearm in March of 2010.   (ECF No. 28-3, at 81.)   "Nor did the Government attempt to prove that Petitioner knew that he had been convicted of a crime punishable by a term exceeding one year at the time that he violated § 922(g), as such knowledge was not  an element of the crime under existing precedent." (ECF No. 28, at 6–7.)

Ultimately, the district court sentenced Petitioner to twenty years in prison as an armed career criminal, pursuant to 18 U.S.C. § 924(e). *Id.*   Petitioner appealed, and the First Circuit affirmed. *Mouscardy*, 722 F.3d at 70.   Thereafter, Petitioner filed a motion to vacate, correct, or set aside sentence under 28 U.S.C. § 2255, and his sentencing court denied that motion. *Mouscardy*, 59 F. Supp. 3d at 291.

Petitioner filed the instant § 2241 Petition in February of 2020.   In his Petition, Petitioner contends that his conviction and sentence are no longer valid in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019).   Respondent filed a motion to dismiss for lack of jurisdiction, (ECF No. 16), and Petitioner filed an Opposition, (ECF No. 18).   The Court terminated Respondent's motion and ordered supplemental briefing to address the merits of the case. (ECF No. 20.)   Respondent filed a supplemental brief, (ECF No. 28), and Petitioner filed a Reply, (ECF No. 31).

## II.    STANDARD OF REVIEW

"Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and set forth "facts supporting each of the grounds thus specified."  28 U.S.C. § 2254 Rule 2(c) (amended Dec. 1, 2004), applicable to § 2241 petitions through Habeas Rule 1(b).  A court addressing a petition for writ of habeas corpus "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled there."  28 U.S.C. § 2243.

Thus, "[f]ederal courts . . . [may] dismiss summarily any habeas petition that appears legally insufficient on its face."  *McFarland*, 512 U.S. at 856.  More specifically, a district court may "dismiss a [habeas] petition summarily when it plainly appears from the face of the petition and any exhibits . . . that the petitioner is not entitled to relief." *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996).

## III.    DISCUSSION

Petitioner challenges his conviction and sentence under 28 U.S.C. § 2241.  Generally, however, a person must bring a challenge to the validity of a federal conviction or sentence under 28 U.S.C. § 2255.  *See Jackman v. Shartle*, 535 F. App'x 87, 88–89 (3d Cir. 2013) (citing *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002)).  This is true because § 2255 prohibits a district court from entertaining a challenge to a prisoner's federal sentence through § 2241 unless the remedy under § 2255 is "inadequate or ineffective."  *See* 28 U.S.C. § 2255(e).  Indeed, § 2255(e) states that:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced

5

him, or that such a court has denied him relief, unless it also appears
that the remedy by the motion is inadequate or ineffective to test the
legality of his detention.

A § 2255 motion is "inadequate or ineffective," which permits a petitioner to resort to a §
2241 petition, "only where the petitioner demonstrates that some limitation or procedure would
prevent a § 2255 proceeding from affording him a full hearing and adjudication of his wrongful
detention claim." *Cradle v. U.S. ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002). However, §
2255 "is not inadequate or ineffective merely because the sentencing court does not grant relief,
the one-year statute of limitations has expired, or the petitioner is unable to meet the stringent
gatekeeping requirements of . . . § 2255." *Id.* at 539. "It is the inefficacy of the remedy, not the
personal inability to use it, that is determinative." *Id.* at 538. "The provision exists to ensure that
petitioners have a fair opportunity to seek collateral relief, not to enable them to evade procedural
requirements." *Id.* at 539 (citing *In re Dorsainvil*, 119 F.3d 245, 251–52 (3d Cir. 1997)).

In *Dorsainvil*, the Third Circuit held that the remedy under § 2255 is "inadequate or
ineffective," permitting resort to § 2241 (a statute without timeliness or successive petition
limitations), where a prisoner who previously had filed a § 2255 motion on other grounds "had no
earlier opportunity to challenge his conviction for a crime that an intervening change in substantive
law may negate." 119 F.3d at 251.

Thus, under *Dorsainvil* and its progeny, this Court would have jurisdiction over the Petition
if, and only if, Petitioner alleges: (1) his "actual innocence," (2) as a result of a retroactive change
in substantive law that negates the criminality of his conduct, and (3) for which he had no other
opportunity to seek judicial review. *See Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 180 (3d
Cir. 2017); *Okereke*, 307 F.3d at 120; *Cradle*, 290 F.3d at 539; *Dorsainvil*, 119 F.3d at 251–52.
To establish actual innocence, "a petitioner must demonstrate that, in light of all the evidence, it is
more likely than not that no reasonable juror would have convicted him." *Bruce*, 868 F.3d at 184

(quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) (internal quotation marks omitted).

In making such a determination, "a district court considers what a reasonable, properly instructed

juror would do in light of all the evidence." *Serrano v. Ortiz*, No. 19-15036, 2020 WL 6689987,

at *2 (D.N.J. Nov. 13, 2020) (citing *Bruce*, 868 F.3d at 184).

In the present case, Petitioner contends that his conviction and sentence are no longer valid

in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019).  Although Petitioner organizes his

Petition as having several separate grounds, each ground is merely an argument in support of his

*Rehaif* claim.[1]  (ECF No. 1, at 7–9.)  "In *Rehaif*, the Supreme Court held that 'the Government

must prove both that the defendant knew he possessed a firearm and that he knew he belonged to

the relevant category of persons barred from possessing a firearm' to obtain a conviction under §

922(g)." *Farrell v. Warden FCI Fairton*, No. 20-4414, 2021 WL 222684, at *2 (D.N.J. Jan. 22,

2021) (quoting *Rehaif*, 139 S. Ct. at 2200).  Afterwards, in *Nasir*, the Third Circuit confirmed that

the "latter half of that holding — that the government must prove that the defendant knew of his

status as a person prohibited from having a gun — announced a newly found element of the crime."

*Nasir*, 982 F.3d at 160,  *cert. granted, judgment vacated on other grounds*, No. 20-1522, 2021 WL

4507560 (U.S. Oct. 4, 2021).

As the Supreme Court decided *Rehaif* after Petitioner's direct appeals and § 2255

proceedings, he had no earlier opportunity to raise such a claim and he satisfies the third *Dorsainvil*

prong.  In his motion to dismiss, Respondent contends that Petitioner fails to demonstrate actual

innocence, under the first *Dorsainvil* prong.

---

[1] For example, Petitioner contends, under separate grounds, that his indictment, felony stipulation,
and jury instructions were deficient in light of *Rehaif*. (ECF No. 1, at 7–9.)

### A.  Retroactivity

Before addressing the parties' arguments, the Court will first discuss the second *Dorsainvil*

prong, because neither party has properly addressed whether *Rehaif* is retroactively applicable to

cases on collateral review.   "The Supreme Court has not yet addressed this issue," and to "the

extent the Courts of Appeals have, they have done so within the context of second or successive §

2255 motions premised on *Rehaif*." *Mathis v. United States*, No. 20-8951, 2021 WL 1783285, at

*3 (D.N.J. May 5, 2021).

In those cases, the Third Circuit and several of its sister Circuits have held that "*Rehaif*

neither announced a new constitutional rule of law nor was [it] made retroactive to cases on

collateral review to allow for second or successive petitions under § 2255(h)(2)." *Id.*  (citing *In re*

*Sampson*, 954 F.3d 159, 161 (3d Cir. 2020); *Tate v. United States*, 982 F.3d 1226, 1228 (9th Cir.

2020); *Mata v. United States*, 969 F.3d 91, 93 (2d Cir. 2020); *Khamisi-El v. United States*, 800 F.

App'x 344, 349 (6th Cir. 2020); *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019)).

In the context of initial § 2255 motions, district courts within this Circuit have arrived at

different conclusions. *Compare United States v. Roberts*, No. 15-387, 2020 WL 6700918, at *2

n.3 (E.D. Pa. Nov. 13, 2020) (concluding that *Rehaif* applies retroactively to cases

on collateral review), *with  United States v. Zareck*, No. 09-168, 2021 WL 4391393, at *73 (W.D.

Pa. Sept. 24, 2021) (finding that *Rehaif* does not apply retroactively because it "set forth a

procedural rule—not a substantive rule or a watershed rule of criminal procedure"), *Brown v.*

*United States*, No. 20-8965, 2021 WL 120677, at *1 (D.N.J. Jan. 13, 2021) ("As the Third Circuit

has recently explained, *Rehaif* neither created a new 'right' by announcing a new rule of

constitutional law, nor was it made retroactive to collateral review cases." (citations omitted)).

In the context of § 2241, district courts in this Circuit appear to assume that *Rehaif* applies

retroactively, focusing instead on a petitioner's failure to allege or establish actual innocence. *See*,

*Serrano v. Ortiz*, No. 19-15036, 2020 WL 6689987, at *2 (D.N.J. Nov. 13, 2020); *see also Joemon D. Higdon v. Scott Finley*, No. 20-221, 2021 WL 4819308, at *2 (M.D. Pa. Oct. 15, 2021); *Richard Stewart v. Scott Finley*, No. 20-803, 2021 WL 4786380, at *4 (M.D. Pa. Oct. 13, 2021); *Suggs v. Warden, FCI Loretto*, No. 20-52, 2021 WL 3222207, at *3 (W.D. Pa. July 29, 2021); *United States v. Howard*, No. 13-135, 2021 WL 2401392, at *2 (W.D. Pa. June 11, 2021); *Farrell v. Warden FCI Fairton*, No. 20-4414, 2021 WL 222684, at *2–3 (D.N.J. Jan. 22, 2021) (denying a motion to dismiss for lack of jurisdiction).

Although this Court "expresses significant doubts as to whether *Rehaif* . . . [applies retroactively] to cases on collateral review," because the Court intends to dismiss the Petition on other grounds, the Court will assume, without deciding, that *Rehaif* applies retroactively.  *United States v. Darden*, No. 15-173-1, 2021 WL 4476889, at *2 (E.D. Pa. Sept. 30, 2021).

### B.  Actual Innocence

As mentioned above, for this Court to have jurisdiction over Petitioner's claim, he must allege his actual innocence, and to succeed in this Petition he must establish his actual innocence. Post-*Rehaif*, this Court must consider whether Petitioner both "knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S.Ct. at 2200.  In this case, the relevant category is a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).  Petitioner must allege and "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.

At no point in the present case, however, does Petitioner allege that he is actually, meaning factually innocent.  Nowhere in his Petition or other submissions, does he allege that he was not aware that he had been convicted of a crime punishable by imprisonment for a term exceeding one

year, on March 11, 2010, the day he possessed the firearm in question. (*See* ECF Nos. 1, 21, 31; ECF No. 18, at 6–8.)  Petitioner argues that his stipulation, the indictment, the jury instructions, and the Government's evidence were deficient in light of *Rehaif*, because they did not contain the new element, but these arguments go to legal insufficiency.  Under the actual innocence standard, Petitioner bears the burden to show "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S at 623.

As the Supreme Court explained in *Greer*, this burden is a high bar because "convicted felons ordinarily know that they are convicted felons." *Greer v. United States*, 141 S. Ct. 2090, 2095–97 (2021).  Perhaps cognizant of this problem, Petitioner argues that "[t]he issue is not whether evidence of Mouscardy's knowledge exist[s], it is whether that evidence is in the trial record.  To uphold Mouscardy's conviction, the Court would need to look at evidence the jury never saw and then apply that evidence to an element the jury never considered." (ECF No. 18, at 8–9.)  Indeed, he spends additional briefing desperately arguing that this Court should not look at "records[] that were not evidence at trial."  (ECF No. 31, at 5.)

In essence, Petitioner asks the Court "to assume a scenario where the proper instruction was given, but where the Government did not introduce additional evidence to prove that [Petitioner] knew he was a felon." *See Greer*, 141 S. Ct. at 2098 (addressing a *Rehaif* claim on direct appeal, where the petitioner sought to limit the evidence under consideration).  As the Supreme Court observed, "[t]hat is not a realistic scenario." *Id*.

Petitioner refers to a number of cases, attempting to support his position, but those cases did not involve actual innocence and § 2241 habeas proceedings. (ECF No. 31, at 5.)  The Supreme Court has held, in the actual innocence context, that the Government "is not limited to the existing record to rebut any showing that [the] petitioner may make." *Bousley*, 523 U.S. at 623–24; *Bruce*, 868 F.3d at 184 (explaining the actual innocence standard and how it applies in § 2241 cases).

10

This is because, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bruce*, 868 F.3d at 184  (quoting *Bousley*, 523 U.S. at 623–24).

As a result, a "habeas court is not bound by the rules of admissibility that would govern at trial, but must instead make its determination in light of all the evidence." *Bruce*, 868 F.3d at 184 (internal quotation marks omitted).  In other words, district courts are "not limited to the existing record but should consider all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Voneida v. Att'y Gen. Pennsylvania*, 738 F. App'x 735, 738 (3d Cir. 2018) (quoting *Bruce*, 868 F.3d at 184) (internal quotation marks omitted).

With this broader array of evidence, district courts do not exercise their "independent judgement as to whether reasonable doubt exists"; rather, the actual innocence standard "requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329; *Platten v. Ortiz*, No. 18-17082, 2019 WL 6168003, at *5–6 (D.N.J. Nov. 20, 2019).  Additionally, courts must presume that a reasonable juror "would consider fairly all of the evidence presented" and "conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Bruce*, 868 F.3d at 184 (quoting *Schlup*, 513 U.S. at 329).

Applying those principles here, the Government provides Petitioner's presentence report which indicates that Petitioner received three sentences exceeding one year prior to March of 2010. (ECF No. 28, at 5; ECF No. 29, at ¶ 54–55, 57.)  First, in 2003, Petitioner received a two-year sentence for assault and battery with a dangerous weapon. (ECF No. 29, at ¶ 54.)  Later that same year, Petitioner received a separate two-year sentence for assault and battery on a police officer, that ran concurrently with his conviction from earlier that year. (*Id.* at ¶ 55.)  Lastly, in 2005,

Petitioner received a two-year sentence for committing a drug offence near a school or park.  (*Id*. at ¶ 57.)

Moreover, Respondent offers documents to show that Petitioner served those sentences. For example, records from the Suffolk County Sherriff's Department, in Suffolk County, Massachusetts, indicate that Petitioner served 675 days, nearly two years, in the Suffolk County Jail, from December 2, 2003, until October 6, 2005, for Petitioner's 2003 convictions. (ECF No. 28–2.)  Similarly, records from the Plymouth County Correctional Facility in Massachusetts show that Petitioner served two-years from December 19, 2006, for Petitioner's drug conviction in 2005. (ECF No. 28-1.)

The Government could have easily presented this evidence, as well as Petitioner's judgments of conviction, to a jury.  As a result, the "Government could have . . . established at trial . . . that Petitioner served more than one year of imprisonment for these crimes prior to" March of 2010. *Serrano*, 2020 WL 6689987, at *3.  Consequently, "a reasonable and properly instructed juror would likely conclude Petitioner knew at the time he possessed a firearm in [March of 2010] that he had previously been convicted of crimes punishable by more than one year in prison," *i.e.*, that he knew he was a felon.  *Id*. (citing *Sanabria-Robreno*, 819 F. App'x at 83 (finding substantial evidence that defendant knew he was a convicted felon when he possessed a firearm because he previously pled guilty to crimes carrying maximum penalties between five and fifteen years imprisonment and actually served more than one year in prison); *United States v. Bryant*, 976 F.3d 165, 174–75 (2d Cir. 2020) ("we have upheld felon-in-possession convictions after *Rehaif* where the defendant had actually served more than one year in prison on the prior conviction.")).

Once again, Petitioner "does not necessarily deny that he knew of his status as a felon, but instead argues that the Court should not consider" these documents. (ECF Nos. 18, 21, 31.); *Stewart*, 2021 WL 4786380, at *4.  Perhaps because of his "multiple prior felony convictions, and

the numerous years he served in [jail], he cannot rightly argue that he was unaware of his felon status." *Stewart*, 2021 WL 4786380, at *4; *cf. Greer*, 141 S.Ct. at 2100 (holding on direct appeal that "a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon").

In any event, because Petitioner has not alleged that he is actually innocent, meaning factually innocent, of having been a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), his claims do not fall under the *Dorsainvil* exception, and this Court lacks jurisdiction under § 2241 to consider his claims.  *Bruce*, 868 F.3d at 180.

That said, as the discussion above shows, the Government would have had ample evidence to show that Petitioner knew he was a felon[2] at the time he possessed a firearm in March of 2010.

---

[2] To the extent Petitioner argues that he had to be aware that he was a "felon" rather than someone who was convicted of a crime punishable by more than one year, he refers to a distinction without a difference in this context. (ECF No. 1, at 9.)  Under 18 U.S.C. § 922(g):

> The statute uses the term "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." *Id.* However, crimes punishable by more than one year in prison are defined as felonies. 18 U.S.C. § 3559(a); *see also Black's Law Dictionary* 694 (9th ed.2009) (defining "felony" as "a serious crime usually punishable by imprisonment for more than one year or by death"). Indeed, the Court observes that the Third Circuit's pattern jury instructions on 18 U.S.C. § 922(g), repeatedly refers to the offense in question as the offense of being "a felon in possession of a firearm." S1–6, Third Circuit Pattern Jury Instructions (Criminal Cases), 6.18.922G (Matthew Bender ed. 2011). The Third Circuit's pattern instructions further explain that the first element that the United States must prove is "[t]hat [Defendant] has been convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year." *Id.*

*E.g.*, *United States v. Hauck*, No. 11-130, 2011 WL 3876167, at *1 (M.D. Pa. Sept. 1, 2011) (alteration in original).  Indeed, as the Supreme Court noted in *Rehaif*, the critical question is whether a defendant "know[s] that the crime is '*punishable* by imprisonment for a term exceeding one year.'" *Rehaif*, 139 S. Ct. at 2198 (emphasis in original) (quoting § 922(g)(1)).

13

Stated differently, if the Government presented the jury with Petitioner's prior felony convictions and evidence that he served multiple years in jail for those convictions, "a reasonable and properly instructed juror would likely conclude [that] Petitioner knew" he was a felon at the time he possessed a firearm in March of 2010. *See Serrano*, 2020 WL 6689987, at *3.

Accordingly, Petitioner would have failed to establish that in light of *all* of the relevant evidence, that it is more likely than not that no reasonable, properly instructed juror would have convicted him under § 922(g). *Bousley*, 523 U.S. at 623; *Stewart*, 2021 WL 4786380, at *4.   As a result, even if this Court had jurisdiction over Petitioner's *Rehaif* claim, the Court would have denied the claim on the merits.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Respondent's motion and dismiss the Petition for lack of jurisdiction.  Additionally, the Court will grant Respondent's motion to seal the Presentence Report.  An appropriate Order follows.


DATED:  October 27, 2021                                   /s Robert B. Kugler___
                                                          ROBERT B. KUGLER
                                                          United States District Judge